**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

George Brisbon, Appellant,

v.

South Carolina Criminal Justice Academy, Respondent.

Appellate Case No. 2024-001562

———————

Appeal From The Administrative Law Court
Robert Lawrence Reibold, Administrative Law Judge

———————

Unpublished Opinion No. 2026-UP-336
Submitted June 18, 2026 – Filed July 1, 2026

———————

**AFFIRMED**

———————

Donald Gist, of Gist Law Firm, PA, of Columbia, for Appellant.

Rebecca Suzanne Williams, of the South Carolina Criminal Justice Academy, of Columbia, for Respondent.

———————

**PER CURIAM:** George Brisbon appeals the Administrative Law Court's (ALC's) order denying his petition for rehearing after the ALC affirmed the South Carolina Law Enforcement Training Council's final agency decision, which permanently denied him law enforcement certification in South Carolina. On appeal, Brisbon argues the ALC erred when it determined State's Exhibit 12, introduced by the

South Carolina Criminal Justice Academy at the contested case hearing, was (1) properly authenticated pursuant to Rule 901(a) of the South Carolina Rules of Evidence and (2) properly admitted under Rule 803(8) of the South Carolina Rules of Evidence. We affirm pursuant to Rule 220(b), SCACR.

1. We hold the ALC did not abuse its discretion when it found State's Exhibit 12 was properly authenticated because the contents of State's Exhibit 12 are internally consistent and consistent with evidence presented at the contested case hearing. *See Major v. S.C. Dep't of Prob., Parole & Pardon Servs.*, 384 S.C. 457, 464, 682 S.E.2d 795, 799 (2009) ("The ALC's order should be affirmed if supported by substantial evidence in the record."); *Sanders v. S.C. Dep't of Motor Vehicles*, 431 S.C. 374, 382, 848 S.E.2d 768, 772-73 (2020) ("The appellate court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, but may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings or conclusions are affected by an error of law, clearly erroneous in view of the substantial evidence in the record, or are arbitrary, capricious, or characterized by an abuse of discretion." (citation omitted)); *Tennant v. Beaufort Cnty. Sch. Dist.*, 381 S.C. 617, 620, 674 S.E.2d 488, 490 (2009) ("Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached."); *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006) ("The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion."); *State v. Brown*, 424 S.C. 479, 488, 818 S.E.2d 735, 740 (2018) ("[E]vidence must be authenticated or identified in order to be admissible."); Rule 901(a), SCRE ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."); *State v. Green*, 427 S.C. 223, 230, 830 S.E.2d 711, 714 (Ct. App. 2019) ("The authentication standard is not high, and a party need not rule out any possibility the evidence is not authentic." (citation omitted)), *aff'd as modified*, 432 S.C. 97, 851 S.E.2d 440 (2020); *id.* at 232, 830 S.E.2d at 715 ("Most writings meet the authenticity test through Rule 901(b)(4), SCRE, which enables authentication to be proven by: '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.'" (quoting Rule 901(b)(4))); *Kershaw Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 302 S.C. 390, 398, 396 S.E.2d 369, 374 (1990) (holding the trial court did not err when it found documents had been authenticated because the documents "relate[d] to the same subject, [we]re internally consistent, often refer[red] to or answer[ed] each other, frequently b[ore] the senders' letterhead and fit together in a fashion which would be impossible to fabricate"). State's Exhibit

12 consists of three parts: (1) a written statement from Linda McCormick, the manager of the Thomas Bennett House, where Brisbon performed off-duty services; (2) payment schedules for the Thomas Bennett House from July 2018 through June 2019; and (3) a series of email exchanges between Brisbon and McCormick. These documents are internally consistent. In her written statement, McCormick stated that she attached payment schedules she had created from July 2018 to June 2019, the time Brisbon worked and managed events at the Thomas Bennett House, and these payment schedules were contained in State's Exhibit 12. Further, McCormick stated that Brisbon received a monthly coordination fee from July 2018 to June 2019, and the payment schedules included within State's Exhibit 12 showed that a monthly coordination fee of $150 was paid September 2018, October 2018, November 2018, February 2019, March 2019, April 2019, May 2019, and June 2019. In her statement, McCormick also explained the Thomas Bennett House needed one officer per event and that the officer usually worked for five hours. She explained the officers were initially paid at a rate of $25 per hour but that this rate was later changed to $30 per hour due to a change in Charleston Police Department's (CPD) policy. The payment schedules show that after October 1, 2018, the date when CPD changed its off-duty officer pay rate from $25 per hour to $30 per hour, Brisbon and other officers would typically receive $150 a day, consistent with five hours of work at $30 per hour. Also, in the email exchange dated October 18, 2018, Brisbon told McCormick that he was the only person who should receive the monthly coordination fee; this is consistent with the payment schedules because the first time Brisbon was paid a monthly coordination fee, according to the payment schedules, was on October 18, 2018.

Moreover, the information contained in State's Exhibit 12 is consistent with information presented at the contested case hearing. First, McCormick's written statement was consistent with Captain Anthony Cretella's testimony that Brisbon approached McCormick and told her that she would have to pay him an administrative fee so that he could work to have officers cover off-duty shifts for events at the Thomas Bennett House. Second, the revised policy and procedure manual for CPD was introduced as State's Exhibit 15, and it was updated October 1, 2018, and showed that the rate for off-duty employment was $30 per hour. This is consistent with the payment schedules included in State's Exhibit 12 that show that officers were paid $30 per hour after October 1, 2018. Finally, the payment schedules included in State's Exhibit 12 are the same documents that make up State's Exhibit 9, which was admitted without objection.

2. We hold the record contains substantial evidence supporting the ALC's conclusions that (1) the hearing officer erred when he concluded that State's

Exhibit 12 was admissible under the public records hearsay exception and (2) Brisbon was not prejudiced because the information contained in State's Exhibit 12 was cumulative to evidence admitted without objection. *See Major*, 384 S.C. at 464, 682 S.E.2d at 799 ("The ALC's order should be affirmed if supported by substantial evidence in the record."); *Sanders*, 431 S.C. at 382, 848 S.E.2d at 772-73 ("The appellate court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, but may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings or conclusions are affected by an error of law, clearly erroneous in view of the substantial evidence in the record, or are arbitrary, capricious, or characterized by an abuse of discretion." (citation omitted)); *Tennant*, 381 S.C. at 620, 674 S.E.2d at 490 ("Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached."). State's Exhibit 12 was not admissible under the public records hearsay exception because it did not set forth the activities of CPD nor matters observed pursuant to a legal duty, as it was created by McCormick, who did not work for CPD. *See* Rule 803(8), SCRE ("Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . . ."). However, this information contained in State's Exhibit 12 was cumulative to information that was already admitted into evidence. The portion of State's Exhibit 12 that consists of scheduling for the Thomas Bennett House is identical to the documents admitted into evidence without objection through State's Exhibit 9. Further, Captain Cretella read into the record the portion of State's Exhibit 12 that consisted of emails between McCormick and Brisbon, and Brisbon did not object to Captain Cretella reading this information into the record. Regarding the information contained in McCormick's written statement, Captain Cretella testified Brisbon charged McCormick a fee for finding officers to work for assignments he could not cover, that the fee was his idea, and that she paid him $150 per month. Additionally, in the investigative report, admitted as State's Exhibit 14 without objection, the officer who managed off-duty assignments at the Thomas Bennett House before Brisbon stated she did not charge an administrative fee; this information is consistent with the information in McCormick's written statement. *See State v. Jennings*, 394 S.C. 473, 478, 716 S.E.2d 91, 93-94 (2011) ("Improperly admitted hearsay which is merely cumulative to other evidence may be viewed as harmless.").

**AFFIRMED.**[1]

**WILLIAMS, C.J., and KONDUROS and VINSON, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.